AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

United States of America
v.

Rayne Lamont Brownlee Jr.

*Defendant(s)*

Case No. 6:26-mj-1686

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of May 8, 2026 in the county of Brevard in the Middle District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
| --- | --- |
| 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) | Distribution of 40 grams or more of a mixture and substance containing a detectable amount of fentanyl |

This criminal complaint is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

[signature]
*Complainant's signature*

Task Force Officer Timothy Liston, DEA
*Printed name and title*

Sworn to before me over the telephone or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: 6/12/26

Leslie Hoffman Price
*Judge's signature*

City and state: Orlando, FL

Leslie Hoffman Price, U.S. Magistrate Judge
*Printed name and title*

**STATE OF FLORIDA** **CASE NO. 6:26-mj-1686**

**COUNTY OF ORANGE**

**AFFIDAVIT IN SUPPORT OF COMPLAINT**

I, Timothy Liston, being duly sworn, declare and state the following:

**INTRODUCTION**

1. I am a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), Orlando District Office Titusville Post-of-Duty (TPOD), and have been assigned in that capacity since July 2021. As a DEA TFO, I am an "investigator or law enforcement officer" of the United States within the meaning of 18 U.S.C.§ 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516(1).

2. I have been employed with the Brevard County Sheriff's Office (BCSO) since 2015. Since June 2018, I have been assigned to the BCSO Special Investigations Unit (SIU).

3. Over the course of my career, I have participated in and conducted investigations of violations of various federal and state drug laws, including trafficking controlled substances, unlawful possession with intent to distribute controlled substances, distribution of controlled substances, use of communication facilities to commit narcotics offenses, and money laundering. These investigations have resulted in arrests of individuals who have smuggled, trafficked, received, and

distributed controlled substances, including cocaine, marijuana, heroin, fentanyl, and methamphetamine.

4. I have also conducted investigations that involve the identification of co-conspirators through the use of telephone records, financial records, drug ledgers, and other pertinent documents. I have participated in the debriefings of many of those individuals who were arrested and then cooperated with the government about various violations of Title 21 and Title 18 of the United States Code.

5. I have directed numerous confidential informants and cooperating witnesses to successfully infiltrate narcotics organizations to gather intelligence, to participate in consensual recordings in furtherance of trafficking investigations, and to make purchases of controlled substances. I have also purchased controlled substances while acting in an undercover capacity, executed search warrants to seize controlled substances, and conducted surveillance in connection with numerous narcotics investigations.

6. As a result of my participation in the investigations described above, I am familiar with the different tactics and tools in conducting investigations, including visual surveillance, electronic surveillance, the interview of relevant witnesses, the use of confidential informants and sources, the use of pen registers and trap and trace devices, the installation and use of global positioning system (GPS) mobile tracking devices, and the use of court-authorized electronic recording and listening devices. I have also utilized court-authorized prospective cellphone geo-location information in several of these investigations and have authored affidavits in

support of related Title III wiretap applications.

## PURPOSE OF AFFIDAVIT

7. This affidavit is being submitted to establish probable cause in support of criminal complaint against Rayne Lamont BROWNLEE JR. for the distribution of 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), occurring in the Middle District of Florida.

8. This affidavit is based upon my personal knowledge, training, and experience as a law enforcement officer; information I received from other law enforcement officers and agents; and information received from other investigative means, including surveillance and information from a confidential source. The statements contained in this affidavit are based, in part, on information from other DEA Special Agents (SAs) or TFOs and BCSO agents. Because this affidavit is being submitted solely for establishing probable cause to arrest BROWNLEE JR., I have not included every fact or facet of the investigation known to me, only those facts necessary to support a criminal complaint.

## CONFIDENTIAL SOURCE

9. During this investigation, DEA SAs and TFOs and BCSO agents utilized a BCSO confidential source (CS) to conduct four controlled purchases of fentanyl from BROWNLEE JR. in several locations within Brevard County, Florida, within the Middle District of Florida. The CS is providing information and services related to this investigation to the DEA and BCSO for monetary compensation. The

CS's criminal history consists of state arrests and convictions for breach of peace/disorderly conduct, DUI, possession of controlled substance, possession of drug paraphernalia, battery domestic violence, and reckless driving. During this investigation, the information provided by the CS has been corroborated by law enforcement officers and found to be accurate and credible through surveillance, controlled telephone calls (via Facetime), and controlled purchases of narcotics during law enforcement operations.

10. In or about March 2026, the CS was debriefed by law enforcement about the drug trafficking related activities of BROWNLEE JR. The CS reported that BROWNLEE JR. is distributing quantities of fentanyl throughout central Brevard County, Florida. The CS advised he/she has known BROWNLEE JR. for a period of time and has purchased fentanyl from BROWNLEE JR. in the past. At the time of the debrief, the CS only knew BROWNLEE JR. by the nickname "Money." Law enforcement was familiar with BROWNLEE JR. using the alias "Money" and showed a recent photograph of BROWNLEE JR. to the CS. The CS identified BROWNLEE JR. as the individual he/she knew as "Money."

## **FACTS ESTABLISHING PROBABLE CAUSE**

11. In March 2026, the DEA and BCSO partnered in a joint investigation into the drug trafficking related activities of BROWNLEE JR. in Brevard County, Florida, within the Middle District of Florida.

12. From March to May 2026, the DEA and BCSO utilized the CS to conduct four controlled purchases of fentanyl from BROWNLEE JR. During the

controlled purchases, BROWNLEE JR. and the CS would meet at different locations throughout central Brevard County, Florida to complete the transactions. During some of the deals, law enforcement was able to surveil BROWNLEE JR. leaving his residence at 6721 Fawn Ridge Drive, Melbourne, Florida, and traveling to the deal locations.

13. Prior to the drug transactions, law enforcement provided the CS with Official Advanced Funds (OAF) that were used to purchase the drugs. Law enforcement also equipped the CS with audio and video recording devices so that a recording of the transaction could be obtained as evidence. Law enforcement also searched the CS and the CS's vehicle for contraband before and after the transaction, which yielded negative results for contraband.

14. BROWNLEE JR. does not have an adult criminal history besides traffic offenses. As a minor, BROWNLEE JR. had state arrests for battery, trespassing, felony battery, and retaliation against a witness that caused bodily injury.

15. As a result of this investigation, agents established probable cause that BROWNLEE JR. was utilizing his residence to facilitate his drug trafficking activities. Based on this information, I applied for and obtained a federal search warrant for BROWNLEE JR.'s residence. On June 9, 2026, the search warrant was signed and issued by the Honorable Leslie Hoffman Price, United States Magistrate Judge in the Middle District of Florida. *See* Case No. 6:25-mj-1677.

16. On June 11, 2026, law enforcement conducted a buy-bust operation on BROWNLEE JR. in Melbourne, Florida. After arresting BROWNLEE JR., on the

same date, law enforcement executed the search warrant at BROWNLEE JR.'s residence.

**<u>May 8, 2026: Controlled Purchase of Two Ounces of Fentanyl</u>**

17. On May 8, 2026, the CS conducted a controlled purchase of approximately two ounces of fentanyl from BROWNLEE JR. for $4,000.00 OAF. The CS arranged the deal with BROWNLEE JR. via Facetime phone calls at his telephone number (321) 557-5175. During the communication, arrangements were made to meet with BROWNLEE JR. at a hotel parking lot in Melbourne, Florida, within the Middle District of Florida.

18. For this controlled purchase, members of DEA and BCSO set up in surveillance positions around BROWNLEE JR.'s residence anticipating BROWNLEE JR. would leave the residence to travel to the buy location. At the time the CS called BROWNLEE JR., he was currently at his residence.

19. Once the CS arrived in the hotel parking lot, he/she called, via Facetime, BROWNLEE JR. and advised where he/she was parked at. Shortly after, agents observed BROWNLEE JR. exit his residence and enter into his Toyota Tundra pickup truck. Agents then surveilled BROWNLEE JR. as he traveled from his residence to the hotel parking lot.

20. BROWNLEE JR. arrived at the hotel parking lot and parked next to the CS's vehicle. BROWNLEE JR. exited his truck and entered the front passenger seat of the CS's vehicle. BROWNLEE JR. pulled two clear plastic baggies containing suspected fentanyl from his front pants pocket. The CS and BROWNLEE

JR. then exchanged $4,000.00 in documented funds for approximately 58 grams of suspected fentanyl. BROWNLEE JR. exited the CS's vehicle and entered back into his Toyota Tundra.

21. Subsequent to the controlled purchase, the CS met with agents, who collected the suspected fentanyl and the audio and video recording devices.

22. After the deal, BCSO Agent Woltman conducted a field test of the substance, utilizing a TruNarc digital narcotic analyzer, which returned a presumptive identification of fentanyl. The suspected fentanyl was later sent to the DEA Southeast Regional Laboratory for analysis. The analysis of the suspected fentanyl is still pending.

23. Further, utilizing the CS, law enforcement had conducted three controlled purchases of fentanyl from BROWNLEE JR. before this May 8, 2026 deal. Specifically, on March 6, 2026, law enforcement utilized the CS to purchase a quarter ounce of fentanyl from BROWNLEE JR. On April 1, 2026, law enforcement utilized the CS to purchase one ounce of fentanyl from BROWNLEE JR. On April 17, 2026, law enforcement utilized the CS to purchase one ounce of fentanyl from BROWNLEE JR.

**<u>June 11, 2026: Buy-Bust Operation and Arrest</u>**

24. As stated above, on June 9, 2026, DEA obtained a federal search warrant for BROWNLEE JR.'s residence, 6721 Fawn Ridge Drive, Melbourne, Florida.

25. On June 11, 2026, members of DEA and BCSO SIU conducted a buy-bust operation to arrest BROWNLEE JR. Law enforcement utilized the CS to arrange a purchase of $9,500.00 worth of fentanyl from BROWNLEE JR. in Melbourne, Florida.

26. At approximately 11:51 a.m., BROWNLEE JR. arrived at the pre-arranged parking lot with the intent of meeting the CS to sell fentanyl. As BROWNLEE JR. parked, law enforcement parked behind him and ordered him out of the vehicle. Once BROWNLEE JR. was in custody, law enforcement ordered his passenger out of the vehicle who was also detained.

27. Law enforcement located approximately 130 grams of suspected fentanyl in the bed of BROWNLEE JR.'s truck, which is consistent with the amount arranged to be purchased by the CS. In the cab of the truck, specifically in the back seat area, law enforcement located three Glock semi-automatic handguns and one AK47 style rifle.

28. At the conclusion of the buy-bust operation, the passenger from BROWNLEE JR.'s vehicle was released on scene. Law enforcement then transitioned to BROWNLEE JR.'s residence for the execution of the search warrant. BCSO agents also transported BROWNLEE JR. to his residence.

**June 11, 2026: Federal Search Warrant at 6721 Fawn Ridge Dr, Melbourne, FL**

29. At approximately 12:25 p.m., law enforcement executed the search warrant at BROWNLEE JR.'s residence. Law enforcement had surveillance on the residence from the time BROWNLEE JR. left and traveled to the buy-bust location.

No one arrived or exited the residence, and no one was inside at the time of search warrant.

30. During a search of the residence, law enforcement located drug manufacturing and packaging materials in the kitchen area. Law enforcement located a hydraulic drug press on the floor in the middle of the kitchen. Law enforcement also located a digital scale, blender, cutting agents, and other items containing residue that appeared to have been used in the manufacturing of fentanyl.

31. In BROWNLEE JR.'s room, law enforcement located several documents with his name on them, to include school identification cards. In the room, law enforcement located approximately 18 grams of suspected fentanyl and 150 grams of suspected marijuana. Law enforcement located a Master Piece Arms 5.7x28mm semi-automatic handgun, a Savage Axis 6.5 Creedmoor hunting style rifle, an AR15 style rifle that had no insignia or markings, and an Arminius Titan Tiger revolver. Law enforcement located a bank security bag on top of a dresser which contained approximately $3,000.00 in United States Currency.

32. In the living room area, law enforcement located a locked safe. Inside the safe, law enforcement located approximately 65 grams of suspected heroin, approximately 8 grams of suspected methamphetamine, and several orange prescription bottles containing pills such as Alprazolam, Methadone, and Oxycodone. Also in the living room, located on top of the entertainment center, law enforcement located another bank security bag, which contained approximately $20,000.00 in United States Currency.

## CONCLUSION

33. Based on the information set forth above, I submit that probable cause exists that on or about May 8, 2026, BROWNLEE JR. distributed a controlled substance, specifically 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).

Respectfully,

Task Force Officer Timothy Liston
Drug Enforcement Administration

Affidavit submitted by electronic means and attested to me as true and accurate via telephone and/or video conferencing consistent with Fed. R. Crim. P. 4.1 and 41(d)(3), this 12th day of June, 2026.

THE HONORABLE LESLIE HOFFMAN PRICE
United States Magistrate Judge